STATE of Wisconsin EX REL. Oscar Bill
McMILLIAN, Petitioner.

v.

Walter DICKEY, Administrator; Warren Young,
Superintendent; and Department of Health &
Social Services, Division of Corrections,
Respondents.

Court of Appeals

*No. 85–1198. Submitted on briefs March 26, 1986.—Decided
June 11, 1986.*

(Also reported in 392 N.W.2d 453.)

For the petitioner, the cause was submitted on briefs, pro se.

For the respondents, the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *John J. Ginski,* assistant attorney general.

Before Brown, P.J., Nettesheim and Moser, JJ.

NETTESHEIM, J.   Oscar B. McMillian appeals from an order of the circuit court denying relief in McMillian's habeas corpus and certiorari actions. We affirm the circuit court's denial of habeas corpus relief to McMillian. We construe a portion of McMillian's writ of certiorari action as a further habeas corpus proceeding and grant habeas relief to McMillian. We premise this holding upon the following undisputed historical fact: Despite obtaining a writ of certiorari in March 1974 mandating judicial review of his probation revocation, McMillian has yet to receive a judicial hearing on the merits in this matter. We conclude this delay is a violation of McMillian's due process rights.

We therefore reverse and remand with directions that the probation revocation order be vacated.

Despite a protracted history, the procedural facts of this case are undisputed. On October 23, 1973, McMillian pled guilty to one count of masked armed robbery and two counts of armed robbery. McMillian was sentenced to concurrent twelve-year terms on each count.[2] These sentences were stayed and McMillian was placed on probation for a period of five years.

On November 2, 1973, McMillian was arrested by the Kenosha police department as a suspect in another armed robbery. As a result, the Department of Health and Social Services filed a probation hold against McMillian for the alleged possession of a weapon. Based upon this allegation, revocation of probation proceedings were instituted against McMillian. An administrative hearing on the department's probation revocation request was held on January 23, 1974. On February 15, 1974, McMillian's probation was formally revoked.

On March 1, 1974, McMillian filed a petition for a writ of certiorari challenging the revocation of his probation. The trial court granted McMillian's petition and the writ was filed the same day. In conjunction with the certiorari application, McMillian also obtained an order staying execution of the probation revocation.

The writ of certiorari commanded a return to the writ within fifteen days and also a transcript of the record and proceedings in the revocation action. The department's return was made on March 22, 1974, but did not include the transcript of the revocation proceed-

---

[2] Judge William Jones was the sentencing judge.

ings, "[d]ue to the work load of the reporter. . . ." The return anticipated completion of the transcript by April 10, 1974.[3]

After the department filed its return to the writ of certiorari, initial correspondence from the department to the trial court revealed that the department could not fulfill the trial court's order for a transcript of the revocation proceedings because the reporter's notes were lost. By later correspondence dated July 8, 1980, the department advised McMillian that the reporter's notes had been destroyed.

McMillian's securing of the writ of certiorari was undertaken with the representation of Attorney Myron Keyes. On July 25, 1974, Attorney Keyes was replaced as counsel for McMillian by Attorney Wilbur Warren, who was representing McMillian on the then pending armed robbery charge stemming from the arrest of November 2, 1973.

On October 26, 1974, following jury trial, McMillian was convicted of the armed robbery charge. By judgment of conviction dated December 6, 1974, McMillian was sentenced to a term of 20 years in the state prisons. This sentence was imposed consecutive to the twelve-year concurrent sentences previously imposed in the instant case.[4]

---

[3] Inexplicably, the record forwarded to us for purposes of appeal does not include the original return to the writ of certiorari. Our references to the return are from a copy attached to McMillian's petition for a writ of habeas corpus filed in the circuit court on January 18, 1984. The department does not challenge the accuracy of the references to the return by McMillian.

[4] Judge Harold M. Bode imposed the twenty-year consecutive sentence.

Attorney Warren's last involvement with the armed robbery conviction of December 6, 1974 was the filing of a notice of appeal to the supreme court dated December 12, 1974.[5] In the instant case, although Attorney Warren was appointed as McMillian's counsel on July 25, 1974, the record reveals no formal appearance nor any action taken on McMillian's behalf by Attorney Warren. Indeed, all proceedings following the replacement of Attorney Keyes by Attorney Warren were undertaken by McMillian on a pro se basis. Following the filing of the return to the writ of certiorari on March 22, 1974, McMillian's case languished in the circuit court in excess of the next eight years. The transcript of the revocation proceedings has never been filed to this date.

In December 1983, McMillian filed a pro se "brief" in support of his request that the revocation order be set aside. Among the grounds asserted by McMillian for vacation of the revocation order was that the department's loss or destruction of the records concerning the revocation hearing deprived him of his "due process" rights to review.

In January 1984, McMillian filed a pro se petition for a writ of habeas corpus with the circuit court. Among the various grounds asserted for habeas corpus relief by McMillian was the fact that the original order staying the probation revocation was still in effect. Therefore, McMillian reasoned that he was entitled to habeas relief as to these charges.[6]

---

[5] The state public defender represented McMillian on the appeal. The supreme court's decision affirming McMillian's conviction is reported at 83 Wis. 2d 239, 265 N.W.2d 553 (1978).

[6] McMillian's requested habeas relief included: (1) dismissal of the charges; (2) vacation of the revocation order and reinstatement

The circuit court conducted a hearing relative to both the writ of certiorari and the writ of habeas corpus on April 26, 1984. The court denied McMillian's requests for relief as to all proceedings.[7] These denials form the basis for McMillian's appeal.

## WRIT OF HABEAS CORPUS

We first address the circuit court's denial of McMillian's request for habeas corpus relief. This denial was premised upon procedural and substantive grounds. The procedural ruling held that McMillian's application for relief was untimely. This ruling will be addressed in a later portion of this decision.

As to the substantive issue, we must first address our standard of review. No Wisconsin case has expressly set forth the standard of review an appellate court must apply when reviewing a lower court's ruling in a habeas corpus proceeding.[8] When federal courts

---

of the probation retroactive to the date of revocation; (3) vacation of the revocation order and the ordering of a new revocation hearing; and (4) any other appropriate remedy.

[7] This included denial of relief in another certiorari proceeding commenced by McMillian in February 1984 challenging the parole board's various denials of parole. Although the notice of appeal is from the order resulting from this hearing, McMillian does not argue the denials of parole as an issue on appeal.

[8] The supreme court has set down standards of review as to findings of fact made following reference for additional factfinding in an *original* action for writ of habeas corpus filed in the supreme court. *See State ex rel. White v. Gray,* 58 Wis. 2d 285, 288, 206 N.W.2d 163, 165 (1973). The standard of review in extradition proceedings reviewed by habeas corpus has also been addressed. *See*

have been asked in habeas cases to review a state court's factual determinations in a habeas proceeding, the state court's factual findings have been afforded "considerable deference." *See, e.g., United States ex rel. Heral v. Franzen,* 667 F.2d 633, 636 (7th Cir. 1981); *Burns v. Clusen,* 599 F. Supp. 1438, 1443 (E.D. Wis. 1984). This is equivalent to the clearly erroneous test we routinely apply to factual determinations made by a trial court. *See* sec. 805.17(2), Stats.

Although the findings of historical fact are presumed correct and normally merit federal court deference, the legal conclusions drawn by state courts from those historical facts have been subject to independent review by the federal courts. *See Cuyler v. Sullivan,* 446 U.S. 335, 342 (1980); *Nash v. Israel,* 707 F.2d 298, 301 (7th Cir. 1983); *Burns,* 599 F. Supp. at 1443. This is equivalent to the *de novo* test we routinely apply to a trial court's conclusions of law. *See, e.g., First National Leasing Corp. v. City of Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977). Thus, the federal courts have treated habeas cases as presenting mixed questions of law and fact.

■ We are persuaded that the same standard of review as applied by the federal courts should apply in a state appellate court review of a circuit court's habeas ruling. Moreover, although the procedural history of this case is lengthy, it is not disputed. It is upon the procedural record of this case that McMillian bases

*State ex rel. Sieloff v. Golz,* 80 Wis. 2d 225, 240–41, 258 N.W.2d 700, 705 (1977). The standard of review when habeas corpus was used to challenge a bind over following preliminary examination has also been addressed. *See State ex rel. Marachowsky v. Kerl,* 258 Wis. 309, 313, 45 N.W.2d 668, 670 (1951).

some of his habeas and certiorari claims for relief. When the facts are undisputed, the question presented upon appeal is one of law. *State v. Williams,* 104 Wis. 2d 15, 21–22, 310 N.W.2d 601, 605 (1981).

McMillian contends that he is entitled to habeas relief because of the February 27, 1974 order staying execution of the probation revocation. The circuit court concluded that although the stay had never been lifted, the failure to do so was a technicality and oversight. In effect, the trial court concluded that the stay, as a practical matter, had been lifted.

We affirm the trial court's denial of this aspect of habeas corpus relief sought by McMillian, but on slightly different grounds. The trial court viewed the failure of the state to procure an order vacating the stay of execution of McMillian's probation revocation as a "technicality." We conclude that the stay was void *ab initio.* The right to suspend the execution of a sentence[9] after it has been pronounced cannot be sustained, except as incident to a review of the case upon a writ of error, or upon other well-established legal grounds. *In re Webb,* 89 Wis. 354, 356, 62 N.W. 177, 178 (1895); *State v. Braun,* 100 Wis. 2d 77, 84, 301 N.W.2d 180, 183 (1981). "After sentence given, the matter within these limits would seem to be wholly within the hands of the executive officers of the law." *Id.* At the time of the entry of the order staying the probation revocation in the instant case, the only statutory author-

---

[9] Although the stay was against the execution of the revocation order and not the execution of the sentence, its practical and legal effect was the same—it sought to stay the execution of the sentence against McMillian.

ity for staying a sentence was for purposes of probation. *See* sec. 973.09(1), Stats. (1973).[10]

Historically, it has been recognized that a stay pending appeal is appropriate. *See Reinex v. State,* 51 Wis. 152, 8 N.W. 155 (1881); *Braun* at 85, 301 N.W.2d at 184. A stay of execution of a sentence has also been allowed on a limited basis for purposes of efficient judicial administration of cases. *See Weston v. State,* 28 Wis. 2d 136, 147, 135 N.W.2d 820, 826 (1965). McMillian's certiorari proceeding did not, however, represent an appeal from any judgment; nor was the stay entered for any purpose related to the efficient judicial administration of McMillian's cases.

Based upon the grounds asserted in his petition and supporting documents, McMillian has therefore failed to meet his assigned burden in a habeas corpus proceeding of showing that his detention is illegal by a preponderance of the evidence. *See Walker v. Johnston,* 312 U.S. 275, 286 (1941); *State ex rel. Alvarez v. Lotter,* 91 Wis. 2d 329, 334, 283 N.W.2d 408, 410 (Ct. App. 1979). We therefore affirm this portion of the circuit court's ultimate determination denying McMillian habeas corpus relief.

## WRIT OF CERTIORARI

A writ of certiorari is the proper means to review a probation revocation determination by the department. *State ex rel. Johnson v. Cady,* 50 Wis. 2d 540,

---

[10] Present sec. 973.15(8), Stats., permits a sentencing court to stay execution of a sentence of imprisonment only: (1) for legal cause; (2) for probation; or (3) for not more than sixty days.

549–50, 185 N.W.2d 306, 311 (1971). McMillian's "brief" in support of his certiorari action, although inartfully drawn, asserts various alleged errors and defects in the revocation proceedings. Included in McMillian's complaints, although registered under the label of certiorari, is that judicial review of his probation revocation has been denied or delayed.[11] Certiorari, by its very nature, contemplates a judicial review, on the merits, of a departmental decision to revoke probation. Certiorari cannot lie to litigate a complaint that judicial review has not occurred or been unreasonably delayed.

However, we follow a liberal policy when judging the sufficiency of pro se pleadings by prisoners. *State ex rel. Terry v. Traeger,* 60 Wis. 2d 490, 496, 211 N.W.2d 4, 8 (1973); *State ex rel. Staples v. DHSS,* 130 Wis. 2d 285, 288, 387 N.W.2d 118, 120 (Ct. App. 1986). We may look beyond the legal label affixed by the prisoner to a pleading and treat a matter as if the right procedural tool was used. *See bin-Rilla v. Israel,* 113 Wis. 2d 514, 522–23, 335 N.W.2d 384, 389 (1983); *Staples,* 130 Wis. 2d at 288, 387 N.W.2d at 120. The only available procedure by which McMillian can *now* litigate his claim of unreasonable delay in procuring judicial review of his probation revocation *where the probation term has expired* is by habeas corpus.[12]

---

[11] Because McMillian contends that the department's loss or destruction of the reporter's notes serves to render judicial review impossible or meaningless, McMillian's complaint concerning the delay is directed more at the department than at the circuit court. McMillian does, however, argue that the circuit court's certiorari decision failed to address his issues on the merits.

[12] Contempt against the department for failure to provide the transcript is not an adequate remedy since the probationary period

We therefore conclude that this aspect of McMillian's certiorari action put before the circuit court an issue which could only be addressed by habeas corpus—and we review it as such. The failure of the circuit court to discern this procedural distinction is *de minimis* because the court, nevertheless, met the essence of McMillian's complaint, albeit within the context of its certiorari ruling.

## THE DELAY AND ITS EFFECT

We therefore turn to an examination of the circuit court's ruling which held that McMillian's complaint that judicial review had been denied or delayed was untimely.

Pursuant to our holding earlier in this opinion, this issue presents a mixed question of law and fact. Moreover, this case, as with many habeas cases, presents a constitutional question. While the trial court's findings of evidentiary or historical fact will not be overturned unless they are clearly erroneous, *see State v. Woods*, 117 Wis. 2d 701, 715, 345 N.W.2d 457, 465 (1984), the application of constitutional principles to the facts of a case is subject to independent appellate review. *Id.*

The circuit court noted, in part:

> In 1984 it is not timely to attempt to seek a remedy regarding arbitrarily capricious action or even ac-

has now run and the department has, presumably, lost jurisdiction over McMillian as to this case. For the same reasons, mandamus against the department to compel the production of the transcript and against the circuit court to conduct a judicial hearing on the merits are ineffective.

tion you're saying apparently erroneous as a matter of law. That indeed they could not as a matter of law invoke you to assert that in 1984 rather than in 1974 or '76 or whatever that indeed it is untimely.

While McMillian's habeas corpus proceeding was not commenced until January 18, 1984, it was brought only after McMillian had *timely* commenced his certiorari action a decade earlier and while he was still awaiting a judicial determination in that proceeding. The circuit court's ruling was essentially premised on a finding of laches against McMillian. While we recognize that a habeas proceeding may be dismissed under the equitable doctrine of laches,[13] the delay on the part of the petitioner must be unreasonable.[14] What is reasonable varies from case to case and involves the totality of the circumstances. *Rollins Burdick Hunter of Wisconsin, Inc. v. Hamilton,* 101 Wis. 2d 460, 468–70, 304 N.W.2d 752, 756–57 (1981). As previously noted, the procedural history of this case is undisputed. Consequently, we review this case independent of the trial court's conclusions. *See Williams,* 104 Wis. 2d at 21–22, 310 N.W.2d at 605.[15]

---

[13] *See Mayola v. Alabama,* 623 F.2d 992, 999 (5th Cir. 1980), *cert. denied,* 451 U.S. 913 (1981).

[14] In addition, the state must demonstrate that it must suffer actual prejudice from the delay in its ability to respond to the grounds upon which habeas is sought. *See Baxter v. Estelle,* 614 F.2d 1030, 1032–33 & n.2 (5th Cir. 1980), *cert. denied,* 449 U.S. 1085 (1981); *Mayola,* 623 F.2d at 999.

[15] We recognize that because in some cases the trial court's legal conclusion regarding reasonableness is so intertwined with the factual findings supporting that conclusion, we should give some weight to the trial court's decision. *See Wassenaar v. Panos,* 111 Wis. 2d 518, 525, 331 N.W.2d 357, 361 (1983). In this case, however, the trial court's review was restricted to a "paper record" and

■

Here, the delay was preceded by McMillian's timely writ of certiorari action seeking judicial review of his probation revocation. The ensuing delay relative to the certiorari proceeding cannot be attributed to McMillian when he has done everything that the law governing judicial review of probation revocation requires. Neither the department nor the circuit court points to any additional procedure or action that McMillian was *legally required* to take.

The trial court and department fault McMillian for failing to "pursue" his certiorari action in not making further demands or inquiries concerning the status of his case. According to the circuit court and the department, a petitioner in a certiorari action must not only properly file his action, but he must then additionally cajole and prod both the circuit court and the department to perform those actions already required of them by virtue of the filing of the action. We reject this attempt to shift the blame for delay in the proceedings from those who have failed to act in the manner required by law to one who has complied with all legal requirements.

Moreover, the allegation that McMillian failed to make inquiries or demands concerning his case is incorrect. By letter dated June 1, 1980, McMillian wrote to the department seeking production of the record of the proceedings. In addition, McMillian wrote separate letters to Attorneys Warren and Keyes on July 11,

---

did not involve the taking of testimony or the weighing of credibility. As a result, we are in just as good a position as the trial court to determine the reasonableness of the petitioner's delay based on the undisputed record. Accordingly, we review this question independently.

282

1980, inquiring as to the status of the revocation proceedings transcript.[16]

The statement of the trial court that McMillian was attempting to raise in 1984 matters that should have been raised earlier reflects an incorrect reading of the procedural record in this case. In fact, McMillian sought to correct the perceived wrongs in the revocation proceedings on March 1, 1974—*eleven days after he was notified by letter from the department that his probation had been revoked.* As to the delay aspects of the case, McMillian can hardly be held to complain about delay until it had occurred.

We conclude that the delay present in this case was due either to the failure of the department to comply with the command of the writ of certiorari or the failure of the circuit court to conduct the review hearing contemplated by the law. Irrespective of where the blame properly lies as between the circuit court and the department, the delay in no way can be attributed to McMillian. Even if it were otherwise, we do not conclude that the delay was unreasonable given McMilli-

---

[16] The circuit court alluded to a letter from Attorney Warren to McMillian in which Attorney Warren opines that "[t]here is no reason to pursue a hearing on the probation revocation if you have a criminal conviction." This letter is not part of the record forwarded to us for purposes of appeal. A copy of the letter is included in McMillian's appendix. Nonetheless, given the fact that all meaningful action in this case was taken by McMillian on a pro se basis, we are reluctant to bind McMillian to an opinion tendered by an attorney who as a practical matter was not actively representing him as to the merits of the action. Furthermore, we question the accuracy of the advice in light of the consecutive nature of the sentences. Finally, neither McMillian nor Attorney Warren ever formally requested that the actions be dismissed or that the petitions be withdrawn.

an's timely filing of the certiorari action, his intervening attempts to obtain the revocation proceeding transcripts and the department's vacillating position on the status of the transcripts.[17]

The department claims that, regardless of the timeliness question, the proceedings of April 26, 1984, constituted the judicial review sought by McMillian. Although this begs the question of the effect of departmental or circuit court delay on McMillian's request for relief, we nonetheless disagree that meaningful judicial review has occurred. Although the circuit court did find that McMillian had not met his burden to show a basis for reversing the probation revocation, this represents the extent of the circuit court decision on the merits of McMillian's claims. At no time did the circuit court address the specific issues McMillian raised. This

---

[17] In its return to the writ of certiorari, the department initially took the position that it was not obligated to provide a transcript of the record of the revocation hearing unless specifically commanded and directed by the court. However, the writ of certiorari specifically commanded "a correct transcript of the record and proceedings in said administrative action. . . ." The department then advised Judge Jones by letter dated March 22, 1974 that the transcript could not be completed until April 1974, due to the work load of reporters. Documents attached to McMillian's 1983 brief in support of his certiorari review indicate that as of April 9, 1974, the department knew that the reporter's notes were either lost or destroyed. This information, however, was not conveyed to McMillian until a letter to this effect was mailed by the hearing examiner to McMillian on July 8, 1980. This letter also indicated that the information concerning the reporter's notes would be conveyed to the sentencing court. Thus it appears that even the circuit court was not notified of the "destroyed" status of the reporter's notes until in excess of six years after the filing of the initial writ.

is understandable in light of the fact that a transcript of the proceedings has *yet* to be provided to the circuit court, thus making meaningful judicial review of McMillian's probation revocation difficult if not impossible. The scope of judicial review of a probation revocation proceeding is addressed to whether the department's action was arbitrary and capricious and represented its will and not its judgment. *Johnson,* 50 Wis. 2d at 550, 185 N.W.2d at 311. Such review cannot meaningfully occur without a record of the proceedings. We agree with McMillian that, to this date, he has yet to receive a meaningful review of his claimed grievances related to the probation revocation hearing.

We recognize that a constitutional right of speedy trial has been held not to apply to hearings or proceedings involving revocation of probation since these are not criminal prosecutions within the meaning of the constitutional guarantee. *See United States v. Jackson,* 590 F.2d 121, 122–23 (5th Cir. 1979), *cert. denied,* 441 U.S. 912 (1979). However, we have little hesitancy in concluding that a fundamental due process right is violated when an unreasonable delay, now in excess of twelve years, occurs following a petitioner's proper and timely filing of a certiorari proceeding seeking judicial review of his probation revocation. Rudiments of fair play underpin the concepts of due process of law. *See General Electric Co. v. Wisconsin Employment Relations Board,* 3 Wis. 2d 227, 242, 88 N.W.2d 691, 700–01 (1958); *State ex rel. Lyons v. DeValk,* 47 Wis. 2d 200, 205, 177 N.W.2d 106, 108 (1970). Due process is satisfied when an opportunity is accorded to be heard in a court *at a meaningful time* and in a meaningful manner. *See Mathews v. Eldridge,* 424 U.S. 319, 333 (1976);

*State ex rel. Strykowski v. Wilkie,* 81 Wis. 2d 491, 512, 261 N.W.2d 434, 444 (1978). Neither the "meaningful time" nor "fair play" concept attendant to due process is met under the facts of this case.

We conclude that the undisputed historical and procedural facts in this case demonstrate that McMillian has met his burden in showing that his detention is illegal. *See Walker v. Johnston,* 312 U.S. 275, 286 (1941); *State ex rel. Alvarez v. Lotter,* 91 Wis. 2d 329, 334, 283 N.W.2d 408, 410 (Ct. App. 1979).

This leaves the question of an appropriate remedy. Relief under habeas corpus is not limited to release of the person confined. *State ex rel. Memmel v. Mundy,* 75 Wis. 2d 276, 288, 249 N.W.2d 573, 579 (1977). Habeas corpus is essentially an equitable doctrine and a court of equity has authority to tailor a remedy for the particular facts. *Id.* at 288, 249 N.W.2d at 579–80. Such remedy is to be tempered and determined by the effect of the constitutional violation. *Id.* at 288–89, 249 N.W.2d at 580. This usually contemplates a discretionary determination—an exercise properly reserved for the circuit court. *See Barrera v. State,* 99 Wis. 2d 269, 282, 298 N.W.2d 820, 826 (1980), *cert. denied,* 451 U.S. 972 (1981).

Under the facts of this case, however, we see no room for the exercise of discretion as to the appropriate remedy. If the constitutional violation had not occurred and if McMillian had prevailed in his attempt to reverse the department determination revoking his probation, the revocation order would have been vacated. Vacation of a probation revocation order has been found to be an appropriate form of habeas corpus

relief in a case where revocation of a petitioner's probation was found to be violative of the basic requirements of due process. *See Hahn v. Burke,* 430 F.2d 100, 105 (7th Cir. 1970), *cert. denied,* 402 U.S. 933 (1971).[18]

The theoretical forms of relief that could be fashioned in this case include: (1) release; (2) dismissal of the charges; (3) vacation of the revocation order and reinstatement of the probation; (4) vacation of the revocation order and the ordering of a new revocation hearing; and (5) vacation of the revocation order only. Release is inappropriate since McMillian is still imprisoned pursuant to the twenty-year sentence which is not the subject of this appeal. Dismissal of the charges is inappropriate since McMillian is not challenging his convictions. Vacation of the revocation order and reinstatement of the probation or the ordering of a new revocation hearing are inappropriate because the probation term has now expired and the department, presumably, no longer has jurisdiction over McMillian as to these matters.

Thus, vacation of the revocation order reveals itself as the only remaining appropriate remedy. The fashioning of this remedy is not one resulting from an exercise of discretion which contemplates a selection from available options. Rather, the remedy becomes one mandated by law because it is the only one available.

---

[18] We appreciate that in *Hahn* the due process violations occurred within the context of the revocation proceedings rather than by virtue of the review proceedings. This distinction does not persuade us to fashion a different remedy.

## MOOTNESS

Although not argued by the department, we feel compelled to address the possibility that McMillian's grievance is moot since he has now "served" the twelve-year concurrent sentences which are the subject of this appeal. As noted earlier, on December 6, 1974, McMillian was sentenced to a term of twenty years, consecutive to the sentences which are the subject of this appeal. However, consecutive sentences are computed as one continuous sentence. *See* sec. 53.11(3), Stats. In addition, a probation revocation and resultant execution of a sentence presumably bear upon parole considerations. *See State ex rel. Goodchild v. Burke,* 27 Wis. 2d 244, 251–52, 133 N.W.2d 753, 756 (1965), *cert. denied,* 384 U.S. 1017 (1966). Since the duration of McMillian's sentence bears upon these factors, the issue is not moot.

We reverse and remand to the circuit court with directions to vacate the department's order revoking McMillian's probation.[19]

*By the Court.*—Order affirmed in part, reversed in part and cause remanded.

---

[19] The effect of our holding will require the department to adjust McMillian's sentence and status accordingly. We choose not to instruct as to the effect of our decision on these matters because McMillian does not ask that we do so and further because the case involving the twenty-year armed robbery sentence is not before us on appeal. We see these adjustments as more properly taken on an administrative level by the department.